UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                      Case No. 15-cr-20744

v.                                        Hon. Mark A. Goldsmith

DESMOND CAMP,

                Defendant.

_____/

**OPINION & ORDER
SUSTAINING DEFENDANT'S FIRST OBJECTION TO THE PRESENTENCE
INVESTIGATION REPORT, OVERRULING DEFENDANT'S SECOND AND THIRD
OBJECTIONS, AND SUSTAINING IN PART AND OVERRULING IN PART
DEFENDANT'S FOURTH OBJECTION**

Defendant Desmond Camp is scheduled to be resentenced on October 12, 2021. This matter is presently before the Court on Camp's four objections to the Presentence Investigation Report (PSR) that was prepared in 2019. The Government opposes Camp's objections. For the reasons that follow, the Court sustains Camp's first objection, overrules Camp's second and third objections, and sustains in part and overrules in part Camp's fourth objection.

## I. BACKGROUND

### A. Criminal History

Camp has a lengthy criminal history, some of which plays a role in the objections that he raises. On March 24, 1990, Camp committed armed robbery of his former girlfriend's vehicle. 2019 PSR ¶ 47. He was sentenced in Michigan state court to 14 to 22 years' custody. Id. On May 13, 2003, Camp and an accomplice entered a bank, brandished firearms, ordered customers and tellers of the bank to the ground, and used their firearms to force a teller to fill a bag with $2,300. Id. ¶ 49. Camp was sentenced in federal court to 114 months' custody for aiding and abetting bank

robbery, in violation of 18 U.S.C. § 2113, as well as using, carrying, or brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).  Id.  Camp was released on November 23, 2011 and discharged from supervision on November 22, 2014.  Id.

### B.  The Instant Offense

The instant offense occurred on November 15, 2015.  Id. ¶ 13.  Camp committed armed robbery of a Family Dollar store in Detroit, Michigan while two employees were present.  Id. Camp pointed a gun at one of the employees and told her to get on the ground.  Id. ¶ 17.  Camp then told that employee to open the store's cash register, but she told him that she could not do so. Id.; Reeves Statement at PageID.292 (Dkt. 64-1).  A customer entered the location, at which time Camp grabbed one of the employees by the arm and told her to get off the ground.  2019 PSR ¶ 17.  Camp told the employee to tell the customer that the store was closed.  Id.  The employee told the customer that the store was closed and then came back inside the store.  Reeves Statement at PageID.292.  Camp then told the employee to lock the door.  Id.  She did not know how to lock the door, so she just "stood there and pressed some buttons."  Id.  Another customer approached the store, and Camp told the employee to tell that customer that the store was closed.  Id.  When the employee came back into the store, Camp asked her to come to the back of the store with him, but she said "no."  Id.

At some point during the robbery, Camp told the second employees to open the store's safe.  Camp then had the second employee empty the cash register, which contained $150.00.  Id. ¶ 18.  After Camp saw police in front of the store, Camp ran out of the back of the store and was subsequently apprehended.  Id. ¶ 15, 18.  Camp apparently fled the scene before gaining access to the safe.

2

### C. The Original Sentencing

Camp pleaded guilty to Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) ("Count 1"); use of a firearm during and in relation to a crime of violence, in violation of § 924(c)(1)(C)(i) ("Count 2"); and being a felon in possession of a firearm, in violation of § 922(g)(1) ("Count 3"). See Judgment (Dkt. 40). In his sentencing memorandum, he argued that his instant Hobbs Act robbery is not a "crime of violence" and, therefore, could not serve as a predicate for his § 924(c) charge. 7/11/17 Def. Sentencing Mem. (Dkt. 39); 7/11/17 Def. Objs. to 2017 PSR (Dkt. 39-1). Camp also argued that his prior 1990 state robbery and his 2003 federal robbery are not "crimes of violence" and, therefore, could not serve as prior offenses warranting imposition of the 25-year mandatory minimum sentence under § 924(c). Addendum to 2017 PSR at A-1, A-3.[1] To avoid being characterized as a career offender under the U.S. Sentencing Guidelines, which would have increased his offense level to 32, Camp argued that the three robberies are not crimes of violence.[2] Judge John Corbett O'Meara overruled Camp's objections and sentenced him to 31 years' imprisonment on July 14, 2017. 7/14/17 Trans. at 4; Judgment.[3]

---

[1] In addition to these two objections, Camp made six other objections to the 2017 PSR, most of which reiterated Camp's position that he did not qualify as a career offender and, therefore, should have a lower offense level. See Addendum to 2017 PSR at A-1–A-5.

[2] A defendant is a career offender if (i) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (ii) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (iii) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). A career offender who faces a statutory maximum of 20 years or more, but less than 25, has an offense level of 32. Id. § 4B1.1(b).

[3] The case was reassigned on September 14, 2018.

### D. Appeal

Camp appealed his conviction and sentencing, arguing that Hobbs Act robbery is not a crime of violence and, therefore, cannot serve as a predicate for his instant § 924(c) conviction or his career offender classification. The United States Court of Appeals for the Sixth Circuit determined that Hobbs Act robbery is a crime of violence for purposes of § 924(c)(3)(A), which includes force against a person or property, but not for purposes of U.S.S.G. 4B1.2(a)(1), which is limited to force against a person. 6th Cir. Op. at 7 (Dkt. 49). In other words, the Sixth Circuit held that Hobbs Act robbery could serve as a predicate for Camp's § 924(c) conviction, but not his career offender classification.[4] Consequently, the Sixth Circuit affirmed Camp's conviction but vacated his sentence and remanded this matter for resentencing.

### E. Resentencing and Objections to 2019 PSR

The Probation Department prepared a new PSR on April 8, 2019. The probation officer calculated Camp's offense level as 23 and his criminal history category as category III. Based on this offense level and criminal history category, the Guidelines imprisonment range for Counts 1 and 3 is 57 to 71 months. The probation officer determined that the imprisonment for Count 2 is 300 months, the minimum term required by statute if § 924(c)(1)(C)(i) applies. Count 2 is to be served consecutively to all other counts.

Camp filed four objections to the 2019 PSR. First, Camp objects to the probation officer's conclusion that Camp must receive a two-point increase pursuant to U.S.S.G. § 2B3.1(b)(4), arguing that he did not physically restrain the Family Dollar employees during the armed robbery. Second, Camp objects to the probation officer's conclusion that Camp must also receive a two-

---

[4] Accordingly, the PSR made in 2019 following remand does not apply the career offender enhancement. See 2019 PSR ¶ 40.

4

point increase pursuant to U.S.S.G. § 2K2.1(a), arguing that his 1990 and 2003 robberies are not crimes of violence.  Third, Camp objects to the probation officer's conclusion that the 25-year mandatory minimum sentence applies.  Fourth, as a cumulation of his other objections, Camp objects to the probation officer's calculation of his base level offense and Guidelines imprisonment range.  Each objection is addressed in turn below.

## II.  DISCUSSION

### A.  Objection No. 1: The Physical Restraint Enhancement

In calculating Camp's offense level, the probation officer increased the level by two points pursuant to U.S.S.G. § 2B3.1(b)(4)(B)—a provision known as the "physical restraint enhancement"—upon concluding that Camp's "victims were physically restrained to facilitate the commission of the offense."  2019 PSR ¶ 25.  Pursuant to § 2B3.1(b)(4)(B), a defendant's offense level is increased by two points "if any person was physically restrained to facilitate commission of the offense or to facilitate escape."  Under the Guidelines, "physically restrained" means "the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1(1)(L). However, the Sixth Circuit has noted that the enhancement is not strictly limited to "cases where the defendant uses some device such as a rope or handcuffs to restrain the victim."  United States v. Coleman, 664 F.3d 1047, 1050 (6th Cir. 2012) (punctuation modified).

Camp contends that the physical restraint enhancement is inapplicable because "[t]he employee in this case was not moved from one location to another, or required to maintain a position in a more vulnerable place."  Def. 1st Br. at 3 (Dkt. 63).  Meanwhile, the Government argues that the enhancement applies, based on several of Camp's actions:

> In this case, Camp pointing his gun at the cashier coupled with 1) ordering her to the floor; 2) physically grabbing her and pulling her up from the floor; 3) forcing her to ward off customers who might otherwise have witnessed the crime and provided assistance; and 4) ordering her to lock the store in an effort to further

confine her; together with yet an additional, however unsuccessful, attempt to confine the cashier by ordering her to the back of the store as the police arrived all constitute targeted actions against the teller that resulted in physical limitations to her mobility.

Gov't 1st Br. at 4 (Dkt. 64).  The Court takes each action in turn.

### i. Ordering the Employee to the Floor at Gunpoint

The parties debate whether Camp's act of ordering the employee to the floor at gunpoint constitutes physical restraint.  The crux of the parties' debate is whether ordering a victim at gunpoint to not move—which differs from ordering a victim at gunpoint to move to a different location—warrants application of the enhancement.

In Coleman, the Sixth Circuit held that application of the physical restraint enhancement was appropriate because, while robbing a bank, the defendant "used a pistol . . . to require [the victim] to go to a different place and maintain position in a different place." 664 F.3d at 1050–1051 (punctuation modified).  Specifically, the Coleman defendant used his gun to force the victim out of his office and into the bank lobby where the defendant could better monitor the victim's activities.  Id. at 1050.  The Coleman court distinguished the case from cases in which other courts have found the physical restraint enhancement inapplicable where a defendant merely pointed a gun at a victim and ordered the victim to not move.  Id. at 1049–1050.

On several occasions, the Sixth Circuit has expressly declined to reach the question of whether ordering robbery victims to the ground at gunpoint is alone sufficient to impose a physical restraint enhancement.  See United States v. Williamson, 530 F. App'x 402, 406 n.3 (6th Cir. 2013); United States v. Smith-Hodges, 527 F. App'x 354, 357 (6th Cir. 2013).  Other circuit courts have split on the question of whether the physical restraint enhancement can be applied to situations in which an armed defendant simply orders his victims not to move and does not otherwise immobilize them through measures such as those outlined in the commentary to

6

U.S.S.G. § 1B1.1.  Some have found the enhancement should be applied where an armed defendant simply orders a victim not to move.  United States v. Dimache, 665 F.3d 603, 606–07 (4th Cir. 2011); United States v. Miera, 539 F.3d 1232, 1234–1236 (10th Cir. 2008); United States v. Wallace, 461 F.3d 15, 33–34 (1st Cir. 2006); United States v. Gonzalez, 183 F.3d 1315, 1327 (11th Cir. 1999).  Others say that is insufficient.  United States v. Herman, 930 F.3d 872, 877 (7th Cir. 2019); United States v. Parker, 241 F.3d 1114, 1118 (9th Cir. 2001); United States v. Drew, 200 F.3d 871, 880 (D.C. Cir. 2000); United States v. Anglin, 169 F.3d 154, 163–164 (2d Cir. 1999); United States v. Hickman, 151 F.3d 446, 461 (5th Cir. 1998).  Unsurprisingly, Camp relies on Drew and Anglin, see Def. 1st Br. at 4, and the Government relies on Dimache, see Gov't 1st Br. at 3.[5]

Several circuit courts have adopted the view that § 2B3.1(b)(4)(B) applies broadly and, therefore, applies when the defendant points the gun at the victim, "thereby restricting the victim's movements and ensuring the victim's compliance with the desires of the defendant."  Dimache, 665 F.3d at 607; see also Wallace, 461 F.3d at 33 (applying the U.S.S.G. § 2B3.1(b)(4)(B) enhancement, in part, because the defendants "rendered the victims physically immobile by keeping their guns pointed directly at each victim in close range").  The argument for a broad application of § 2B3.1(b)(4)(B) is that the plain meaning of "physical restraint" is broad; indeed, "[t]he dictionary defines 'restraint' as (1) the act of holding back from some activity or (2) by means of force, an act that checks free activity or otherwise controls."  United States v. Fisher, 132 F.3d 1327, 1329–1330 (10th Cir.1997) (quoting United States v. Foppe, 993 F.2d 1444, 1452 (9th

---

[5] The Government also relies on United States v. Taylor, 620 F.3d 812, 814 (7th Cir. 2010).  See Gov't 1st Br. at 3.  However, in Taylor, the Seventh Circuit merely stated in dictum that pointing a gun at someone may be sufficient to warrant application of the enhancement.  620 F.3d at 814. The Seventh Circuit subsequently disapproved of this dictum in its more recent opinion, Herman, 930 F.3d 872.

Cir. 1993)).  Therefore, "[p]hysical restraint is not limited to physical touching of the victim.  Rather, physical restraint occurs whenever a victim is specifically prevented at gunpoint from moving, thereby facilitating the crime.  Keeping someone from doing something is inherent within the concept of restraint, and in this case one coconspirator deliberately kept the security guard at bay by pointing a gun directly at his head while two others looted the teller counter."  Id. at 1329–1330 (citations omitted).

Other circuit courts have taken a narrower view, providing that "[t]he required restraint must, as the language plainly recites, be physical."  Drew, 200 F.3d at 880.  In reaching this conclusion, the Drew court observed that "the phrase 'being tied, bound, or locked up' indicates that physical restraint requires the defendant either to restrain the victim through bodily contact or to confine the victim in some way."  Id.  Likewise, in Anglin, the Second Circuit determined that "[t]he most pertinent definition of 'physical' is 'of the body as opposed to the mind, as, physical exercise.'"  169 F.3d at 164.

More recently, the Seventh Circuit articulated a similar explanation against a broad application of the enhancement: there must be a "line that divides psychological coercion from physical restraint" because "[i]f the Guideline had been meant to apply to all restraints, it would have said so."  Herman, 930 F.3d at 875.  "[I]nstead," the Herman court concluded, "it specifies physical restraints.  That limitation rules out psychological coercion, even though such coercion has the potential to cause someone to freeze in place."  Id. at 875–876.  Put differently, "[w]ords should mean something, and in this case, the fact that the Guidelines call for physical restraint tells us that not all restraints warrant the two-level enhancement."  Id. at 876.

Herman's explanation is persuasive.  Although the term "physical restraint" may have a broad dictionary definition, it is defined much more narrowly in the Guidelines.  In order to give

meaning to the word "physical," it necessarily follows that the enhancement cannot apply to all types of restraint.

This conclusion does not run afoul of Coleman's holding that the enhancement is not limited to cases where the defendant uses "some device such as a rope or handcuffs to restrain the victim," 664 F.3d at 1050, for several reasons. First, Herman's holding allows for the possibility that a defendant may be physically restrained without the use of a device such as a rope or handcuffs. For instance, "[i]f the defendant . . . confines someone in a room from which there is no clear exit . . . or takes any of a thousand other physical actions against the targeted person that result in a physical limitation on her mobility, it makes sense to speak of physical restraint." Herman, 930 F.3d at 876. Second, Coleman made the aforementioned pronouncement in the context of case where the defendant pointed a gun at a victim and ordered the victim to move to a different location and stay in that place—not where a defendant pointed a gun at a victim and ordered the victim to not move. 664 F.3d at 1050–1051. In fact, the Coleman court distinguished the facts of its case from cases in which other courts have found the physical restraint enhancement inapplicable where a defendant merely pointed a gun at a victim and ordered the victim to not move. Id. at 1049–1050. Third, if Coleman compelled an opposite conclusion, one of the Sixth Circuit's post-Coleman opinions declining to address the issue would have presumably said so. However, they did not. See Williamson, 530 F. App'x 402; Smith-Hodges, 527 F. App'x at 357.

It is also worth noting, as the Herman court did, that taking a narrower view of the applicability of the enhancement "does not leave the sentencing judge powerless to take into account, when crafting the sentence, conduct that appears to the judge to be the equivalent of a physical restraint":

> Unless a statutory maximum constrains the judge's discretion, the judge is free to consider the psychological coercion under 18 U.S.C. § 3553(a)(1), as part of "the

nature and circumstances of the offense." If the use of a gun or something else to frighten or coerce a victim seems to be just as bad as a physical restraint, the prosecutor can ask for a sentence that is just as severe. That, however, is the way to account for the cases that lack a physical element—not a strained reading of the Guidelines.

930 F.3d at 877.

Based on Herman's persuasive reasoning, the Court declines to apply the physical restraint enhancement insofar as the Government seeks to apply it to Camp's conduct of ordering the employee to the floor at gunpoint.

### ii. Forcing the Employee to Ward Off Customers

In Coleman, the Sixth Circuit held that application of the physical restraint enhancement was appropriate because, while robbing a bank, the defendant "used a pistol . . . to require [the victim] to go to a different place and maintain position in a different place." 664 F.3d at 1050–1051 (punctuation modified). Specifically, the Coleman defendant used his gun to force the victim out of his office and into the bank lobby where the defendant could better monitor the victim's activities. Id. at 1050.

The Government contends that Coleman compels the conclusion that Camp's act of forcing the employee to ward off customers was an act of physical restraint. Camp argues that Coleman is distinguishable because, here, the employee "was not moved from one location to another, or required to maintain a position in a more vulnerable place." Def. 1st Br. at 3. Camp is incorrect that the employee was not forced to move. The employee's statement establishes that she moved at Camp's direction on both occasions that customers approached the store. It appears that the employee left the store to speak the customers, as her statement provides that after speaking with the customers she went back into the store. Reeves Statement at PageID.292. Camp has put forth

10

no evidence to contradict this statement.[6]  However, Camp is correct that the employee was not required to—and did not—maintain her position where she was moved.  On both occasions that the employee left the store to turn customers away, she subsequently returned.

The Coleman court did not reach the question of whether the physical restraint enhancement applies only where both a defendant uses a firearm to force a victim to move to a different place and the victim maintains his or her position there (i.e. the victim is confined to the place to which he or she is moved).  However, in a post-Coleman decision, Smith-Hodges, the Sixth Circuit suggested that a victim must maintain his or her position in the place where he or she is moved in order for the physical restraint enhancement to apply:

> [The victim] testified that Smith-Hodges "walked him over to the passenger's side of the car and made him lay down on the sidewalk at gunpoint" during the course of the robbery.  [The victim] further testified that Smith-Hodges warned him to stay down or else be shot.  These facts are not materially different than the facts in Coleman.  In both cases, the victim was forced at gunpoint to move to a different, more vulnerable position and maintain it until the defendant could complete the robbery.  And Coleman teaches that such acts taken together are sufficient to trigger the enhancement.

527 F. App'x at 356 (punctuation modified, citations omitted).

Several considerations convince the Court that moving a victim to a different location—without then taking some additional action to confine the victim there—does not qualify as physical restraint.  First, as Herman noted regarding the word "physical," words "should mean something, and in this case, the fact that the Guidelines call for physical restraint tells us that not all restraints warrant the two-level enhancement."  930 F.3d at 876.  The converse is true for physical acts such as movement.  The fact that the Guidelines call for physical restraint means that

---

[6] It is Camp's burden to put forth evidence to show that the employee did not actually move. United States v. Lang, 333 F.3d 678, 681 (6th Cir. 2003) ("A defendant who challenges factual allegations in the PSR has the burden of producing some evidence beyond a bare denial that calls the reliability or correctness of the alleged facts into question.").

not all physical acts—such as movement—warrant the enhancement.  Second, declining to apply the enhancement whenever a robber requires a victim to physically move locations "recognize[s] the need for a limiting principle that would avoid an interpretation under which every armed bank robbery automatically supports the physical-restraint enhancement."  Id. at 875.  Such recognition is necessary in light of the fact that almost every armed robbery will involve some physical movement of the robbery victims.  Finally, as noted in Herman, the Court is free to consider the psychological effect of requiring the victim to leave the store to ward off customers in the analysis of the § 3553(a) factors as part of the nature and circumstances of the offense.  930 F.3d at 877.

Accordingly, the Court will not apply the physical restraint enhancement insofar as the Government seeks to apply it based on Camp's conduct of ordering the employee to ward off customers.

### iii.  Grabbing the Employee and Pulling Her Up from the Floor

Neither party cites any authority to show that the physical restraint enhancement specifically does or does not apply where a defendant grabs a victim and pulls her up from the floor.  Nor does there appear to be any Sixth Circuit opinion directly reaching this exact question.

The Court's resolution of this issue is guided by the limiting principle endorsed above: not all physical touching or movement warrants the enhancement.  Although grabbing a victim and forcing her up from the floor certainly satisfies the requirement that the force be physical, it does not necessarily constitute an act of restraint.  In such a circumstance, the Court "cannot say that the victim was left with no alternative but compliance."  See United States v. Bell, 947 F.3d 49, 61 (3d Cir. 2020).  If the Court were to apply the enhancement in this case, "then any crime that involves a chance encounter with a victim with any physical dimension would require application of the enhancement."  Id.  This result is neither expressly nor impliedly called for by the

Guidelines.  Accordingly, to avoid such a result, the Court rejects the Government's argument that the enhancement is applicable based on Camp's grabbing of the employee to pull her up off the floor.

### iv.  Ordering the Employee to Lock the Store and to Go to the Back

Camp ordered the employee to lock the door and, later, to go to the back of the store.[7] According to the employee's statement, she declined to go to the back of the store when Camp asked her to do so, and when Camp told her to lock the door, she just "stood there and pressed some buttons."  Reeves Statement at PageID.292.  Although "the victim's reaction does not determine whether there is or is not physical restraint," merely brandishing a gun and barking out commands is insufficient to show that the victim's movement was restrained.  Herman, 930 F.3d at 876.  Rather, the defendant's actions must actually force the victim to move somewhere and remain there.  See Coleman, 664 F.3d at 1050–1051.  Accordingly, Camp's actions of ordering the employee to lock the door and go to the back of the store do not warrant application of the physical restraint enhancement.

Having considered and rejected each of Camp's actions that the Government alleges constitute physical restraint, the Court sustains Camp's first objection to the 2019 PSR.

---

[7] Although the Government's briefing addresses only these two orders made by Camp, the 2019 PSR references an additional order that Camp directed at both employees—an order to open the cash register.  The first employee declined to actually open the cash register and, therefore, Camp's order to this employee does not warrant the physical restraint enhancement for the same reasons that Camp's orders to lock the store and go to the back of the store do not warrant it.  The second employee complied with Camp's order and opened the cash register.  However, the enhancement is still unwarranted, based on Smith-Hodge's conclusion that the restraint applies to instructions made at gunpoint only if the victim was forced to move to a different, more vulnerable position and remain there until the defendant could complete the robbery.  See 527 F. App'x at 356.  The 2019 PSR does not indicate that the second employee moved to a different location—let alone to a more vulnerable position (such as from an office into a lobby)—to open the register.

### B.  Objection No. 2: Increase for Prior Convictions for Crimes of Violence

The probation officer determined that Camp's base offense level for being a felon in possession of a firearm in violation of § 922(g)(1) was 24.  2019 PSR ¶ 30.  Pursuant to U.S.S.G. § 2K2.1(a)(2), for offenses involving unlawful possession of a firearm, the base offense level is 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."  Section 2K2.1(a) incorporates the definition of "crime of violence" from § 4B1.2(a) of the Guidelines.  See U.S.S.G. § 2K2.1, cmt. n.1.  That provision, in turn, defines "crime of violence" as any felony that (i) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or (ii) "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)."  U.S.S.G. § 4B1.2(a). The first clause of the definition, § 4B1.2(a)(1), is commonly known as the elements clause, and the second clause, § 4B1.2(a)(2), is commonly known as the enumerated offenses clause.

The two prior convictions allegedly constituting "crime of violence" convictions are the 1990 Michigan armed robbery, in violation of Mich. Comp. Laws § 750.529, and the 2003 federal bank robbery, in violation of § 2113(a).  Each conviction is addressed in turn.

### i.  Michigan Armed Robbery

In order to determine whether armed robbery qualifies as a "crime of violence" as defined by the Guidelines, the Court must "apply a 'categorical' approach, meaning that [the Court] must look at the statutory definition of the crime of conviction, not the facts underlying that conviction, to determine the nature of the crime."  United States v. Yates, 866 F.3d 723, 728 (6th Cir. 2017) (quoting United States v. Ford, 560 F.3d 420, 421–422 (6th Cir. 2009)).  Under the categorical

approach, the Court "must first assume that [the defendant's] conviction rested upon [nothing] more than the least of the acts criminalized, and then determine whether even those acts would qualify as a crime of violence under the [G]uidelines." Id. (punctuation modified).  However, "the minimum culpable conduct criminalized by the statute includes only conduct to which there is a realistic probability, not a theoretical possibility that the state would apply the statute."  Id. (punctuation modified).

At the time of Camp's 1990 conviction, there were three elements of Michigan armed robbery: (i) an assault, (ii) a felonious taking of property from the victim's presence or person, (iii) while the defendant is armed with a weapon described in the statute.  People v. Carines, N.W.2d 130, 135 (Mich. 1999); Mich. Comp. Laws § 750.529 (1990).  The least offensive conduct that violates this statute is assault.  In Michigan, "a simple criminal assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery."  People v. Jones, 504 N.W.2d 158, 160 (Mich. 1993) (punctuation modified).  A battery, in turn, is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." People v. Reeves, 580 N.W.2d 433, 435 n.4 (Mich. 1998).

Camp concludes that because the least offensive conduct for armed robbery is the threat of offensive touching, his Michigan armed robbery conviction is not a crime of violence.  However, Sixth Circuit precedent squarely rejects Camp's position.  In Chaney v. United States, the Sixth Circuit explained that, although Michigan assault may criminalize the threat of mere offensive touching, "the assault element of unarmed robbery requires more than that."  917 F.3d 895, 900–904 (6th Cir. 2019).  This is because unlike a conviction for plain assault or battery, in which "the offensive or embarrassing touching is itself the crime," in an unarmed robbery, "that same

harmless touch would somehow have to deprive the victim of property." Id. at 902. The Chaney court continued: "One can imagine a robbery involving an offensive or embarrassing touch coupled with a threat—implicit or otherwise—of harm for noncompliance. But it strains the imagination to think someone could steal property through an offensive or embarrassing touch alone." Id.

Based on Chaney, the Sixth Circuit subsequently held in Reliford v. United States, 773 F. App'x 248, 253 (6th Cir. 2019) that under the 1990 version of Michigan's armed robbery statute, "the assault element necessarily involved the use, attempted use, or threatened use of physical force." The Reliford court noted that, although there are distinctions between the unarmed robbery statute addressed in Chaney and the armed robbery statute under which the Reliford defendant was convicted, none of those distinctions benefit a defendant convicted under the armed robbery statute. Simply put, "[i]f an unarmed robbery committed by assault satisfies the . . . elements clause, an armed robbery committed by assault must as well." Id.; see also Powers v. United States, No. 12-CR-20443, 2019 WL 1505674, at *1–2 (E.D. Mich. Apr. 5, 2019) (holding that in light of Chaney, the defendant's 1998 conviction for Michigan armed robbery was a violent felony).

Thus, under Reliford, Camp's 1990 state armed robbery conviction is a crime of violence. Camp's second objection is, therefore, overruled as to this conviction.

### ii. Federal Bank Robbery

Conviction for bank robbery under § 2113(a) requires proving that a defendant either (i) "by force and violence, or by intimidation, takes, or attempts to take . . . any property . . . belonging to, or in the care, custody, control, management, or possession of, any bank" or (ii) "enters or attempts to enter any bank . . . with intent to commit in such bank . . . any felony affecting such

bank." Camp argues that this statute is "divisible"—meaning that it sets out one or more elements of the offense in the alternative—and consequently, the Court should apply a variant of the categorical approach known as the "modified categorical approach." <u>Descamps v. United States</u>, 133 S. Ct. 2276, 2281 (2013). Under the modified approach, courts identify which element actually formed the basis of a defendant's conviction. <u>Id</u>. Camp contends that he "committed bank robbery by force and violence or intimidation (via his plea agreement)," and, therefore, the least offensive conduct is bank robbery by intimidation, which does not constitute a crime of violence. Addendum to 2019 PSR at A-4–A-5; <u>see also</u> Def. 1st Br. at 5.

Camp's argument fails under <u>United States v. McBride</u>, 826 F.3d 293 (6th Cir. 2016). There, the Sixth Circuit held that where a defendant pled to bank robbery by force and violence or by intimidation, the categorical approach is used even if the defendant used only intimidation. <u>Id</u>. at 296. This is because intimidation involves the threat of physical force. <u>Id</u>. By contrast, if a defendant pled to bank robbery involving entering or attempting to enter with intent to commit a felony affecting such bank, the modified categorical approach is used. <u>Id</u>. Thus, under <u>McBride</u>, because Camp pled to bank robbery by force and violence or by intimidation, the Court applies the categorical approach to determine whether Camp's § 2113(a) conviction qualifies as a crime of violence.[8]

---

[8] Camp cites <u>Shropshire v. United States</u>, 259 F. Supp. 3d 798 (E.D. Tenn. 2017), <u>amended and superseded by Shropshire v. United States</u>, Nos. 1:19-cv-195, 1:02-cr-72, 2019 WL 6749537 (E.D. Tenn. Dec. 9, 2019), in support of his argument that bank robbery by intimidation is not a crime of violence. However, <u>Shropshire</u> is easily distinguishable. That case involved a carjacking by intimidation, in violation of Tennessee's carjacking statute. The <u>Shropshire</u> court held that intimidation as used in Tennessee's carjacking statute did not share the same definition of intimidation as used by § 2113(a) and, therefore, <u>McBride</u> did not compel the conclusion that a carjacking by intimidation under Tennessee's statute does not categorically qualify as a violent felony. <u>See id</u>. at 805. Unlike the <u>Shropshire</u> defendant, Camp's 2003 conviction was for a violation of § 2113(a).

Camp's second objection is overruled as to his 2003 federal conviction for bank robbery.[9]

## C.  Objection No. 3: Minimum Term for the § 924(c) Violation

Conviction under § 924(c)(1) requires that the defendant used, carried, or brandished a firearm during a crime of violence.  Section 924(c)(3) defines the term "crime of violence":

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
> > (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Section 924(c)(3)(A) is known as the elements/use-of-force clause, whereas § 924(c)(3)(B) is known as the residual clause.  In United States v. Davis, 139 S. Ct. 2319 (2019), the United States Supreme Court held that the residual clause was void for vagueness.  Thus, in light of Davis, a § 924(c)(1) charge can be sustained only under the elements clause.

Under § 924(c)(1)(C)(i), a defendant who violates § 924(c)(1) after a prior § 924(c)(1) conviction becomes final shall "be sentenced to a term of imprisonment of not less than 25 years."  Here, the probation officer determined that Camp was previously convicted for violating § 924(c)(1)—an offense that occurred in connection with his 2003 federal bank robbery offense— and, therefore, the mandatory 25-year minimum sentence applies to the calculation of Camp's

---

[9] Camp argues that his two prior bank robberies cannot constitute crimes of violence because "[i]n his appeal, the Sixth Circuit ruled that '[b]ecause Hobbs Act robbery criminalizes conduct that extends beyond both generic robbery and Guidelines extortion, it is not a crime of violence under the enumerated offense clause.'"  Addendum to 2019 PSR at A-5.  This argument misconstrues the Sixth Circuit's holding.  The Sixth Circuit held that Hobbs Act robbery (robbery under § 1951) is not crime of violence under the Guidelines, but it is a crime of violence under § 924(c)'s use-of-force clause.  6th Cir. Op. at 13.  The Sixth Circuit's opinion says nothing as to whether robbery under Michigan's armed robbery statute or § 2113(a) are crimes of violence under the Guidelines.

sentence for his violation of § 924(c)(1) that occurred in connection with his armed robbery of the Family Dollar store in 2015.

The Court first addresses Camp's argument regarding his prior § 924(c)(1) conviction.  He argues this conviction does not "count" as a prior § 924(c)(1) conviction because, upon completing his sentence and supervised release for this offense, his right to possess a firearm has been restored by operation of Michigan law and, therefore, under Michigan law his prior § 924(c)(1) conviction is no longer a conviction.  See Def. 3d Supp. Br. at 11–13 (Dkt. 96).  As the Government puts it, this is a "Hail, Mary" argument with no basis in the law.  See Gov't Resp. to Def. 3d Supp. Br. at 5 (Dkt. 101).  Federal law—not state law—governs the question of whether a proceeding in federal court constitutes a federal conviction.  See, e.g., United States v. Faison, 61 F.3d 22, 23 (11th Cir. 1995) ("As Faison's prior offenses were in federal court, federal law controls whether a jury verdict constitutes a conviction supporting a charge of possession of a firearm by a convicted felon.").  Camp pled guilty as charged to the 2003 § 924(c)(1) offense and was sentenced.  Under federal law, this constitutes a conviction.  See United States v. Sample, 136 F.3d 562 (8th Cir. 1998) ("Sample's guilty plea, which was accepted by the district court, constitutes a conviction . . . .").  And even assuming that Camp's civil right to possess a firearm was subsequently restored, this does not undo the fact that his prior § 924(c)(1) conviction is a federal conviction.

The Court next addresses Camp's arguments regarding the predicate offenses for his current § 924(c)(1) charge—Hobbs Act robbery—and his prior § 924(c)(1) conviction—the 2003 federal bank robbery.  Regarding the current § 924(c)(1) charge, Camp argues that his instant Hobbs Act robbery offense cannot serve as a predicate for his § 924(c) conviction because it is not a crime of violence under § 924(c).  Addendum to 2019 PSR at A-6; Def. 3d Supp. Br. (Dkt. 95).  This argument is obviously foreclosed by the Sixth Circuit's holding that Camp's Hobbs Act

19

robbery is a crime of violence under § 924(c)'s use-of-force clause.  6th Cir. Op. at 13.[10] Accordingly, the issue need not be rehashed again.  Camp's third objection is overruled insofar as he argued that Hobbs Act robbery is not a crime of violence under § 924(c).

Regarding his prior § 924(c)(1) conviction, Camp argues that his 2003 federal bank robbery conviction cannot serve as a predicate for his prior § 924(c)(1) offense to warrant imposition of the 25-year minimum sentence under § 924(c)(1) because the bank robbery conviction is not a "crime of violence" as defined in the elements clause of § 924(c)(3)(A).  Thus, Camp concludes, the Guidelines imprisonment for Count 2 should be 84 months (rather than 300 months)—the mandatory sentence for a first violation of § 924(c)(1).  The Government responds by arguing that Camp cannot collaterally attack his 2003 conviction from another federal case.  The Government additionally argues that, even if Camp is permitted to collaterally attack his 2003 conviction, his argument would fail on the merits because the conviction qualifies as a proper predicate for a conviction under § 924(c).  The Court takes each argument in turn.

### i. Jurisdiction

The Government relies on Custis v. United States, 511 U.S. 485 (1994) in arguing that the Court lacks jurisdiction to consider Camp's collateral attack on his 2003 conviction.  In Custis, the defendant challenged the use of two prior convictions for a sentence enhancement under § 924(e), arguing that he received ineffective assistance of counsel, was not adequately advised of his rights, and did not make a knowing and intelligent guilty plea.  Id. at 488.  The Supreme Court determined

---

[10] The Sixth Circuit determined that "[u]nder [United States v. Gooch, 850 F.3d 285 (6th Cir. 2017)], Camp's Hobbs Act robbery conviction qualifies as a crime of violence under § 924(c), and his argument to the contrary is foreclosed."  6th Cir. Op. at 3.  Camp contends that the Sixth Circuit reached the wrong conclusion, arguing that "Gooch is not precedent over [his] case."  Def. 3d Supp. Br. at 2.  The Sixth Circuit's well-reasoned decision explains Gooch's applicability.  The Court declines to accept Camp's tacit invitation to overrule the Sixth Circuit's decision.

that § 924(e) does not permit a defendant to use the sentencing forum to collaterally attack his prior convictions, other than collateral attacks based on denial of the right to appointed counsel. Id. at 497.  As the Supreme Court explained, "[b]y challenging the previous conviction, the defendant is asking a district court to deprive the [prior] . . . judgment of its normal force and effect in a proceeding that has an independent purpose other than to overturn the prior judgment."  Id. (punctuation modified).

Camp indeed attempts to collaterally attack his prior sentence through his third objection to the PSR.  He argues that "the conduct that Mr. Camp pled guilty to in his [2003] Rule 11 falls outside the conduct necessary for a 924(c) conviction."  Addendum to 2019 PSR at A-6. Specifically, Camp argues that his "prior bank robbery conviction, which was the predicate offense for his first 924(c) conviction in 200[3], was under the now unconstitutional Residual Clause of the 924(c) crime of violence definition."  Id. at A-7.

Camp's argument that the Court has jurisdiction to consider whether his prior § 924(c) conviction was unconstitutional focuses on the scope of the remand.  See Def. 1st Br. at 5–7.  This argument misses the point.  Even though, as Camp points out, "there is no clear language in the Sixth Circuit's opinion remanding that suggests that it is a limited remand," Def. 2d Br. at 16 (Dkt. 74), this does not mean that the Court can consider collateral attacks forbidden by Supreme Court precedent.

### ii. Merits

Even if the Court could consider the merits of Camp's § 924(c) argument, his argument would still fail.  Camp's 2003 conviction for violating § 924(c) was predicated on his conviction for bank robbery by force and violence or intimidation, in violation of § 2113(a).  See 2003 Rule 11 Plea Agreement at PageID.360–371 (Dkt. 74); 2003 Plea Hr'g Trans. at PageID.389 (Dkt. 74).

21

Relying on McBride, discussed above, the Sixth Circuit has held that armed bank robbery qualifies as a crime of violence under the elements clause in § 924(c)(3)(A).  United States v. Henry, 722 F. App'x 496, 500 (6th Cir. 2018) ("A necessary element of bank robbery is the use of 'force and violence' or 'intimidation.'  And intimidation is all it takes to satisfy § 924(c)(3)(A)'s elements clause, which defines crimes involving the 'threatened use of physical force' as crimes of violence.") (quoting § 2113(a) and citing McBride, 826 F.3d at 296 (construing identical language in U.S.S.G. § 4B1.2(a)(1))).  As a result, Camp's prior § 924(c) conviction remains undisturbed by Davis, which held that a § 924(c)(1) charge can be sustained only under the elements clause.

Camp's third objection is, accordingly, overruled.

### D.  Objection No. 4: Offense Level and Guidelines Range

#### i.  Counts 1 and 3

Camp argues that his total offense level should not be increased by two points under the physical restraint enhancement.  Camp argues that his total offense level should be further reduced by three levels for his acceptance of responsibility, and so the level should be 16.  This new offense level, coupled with Camp's category III criminal history, would yield a Guidelines imprisonment range of 30 to 37 months (instead of 57 to 71 months) for Counts 1 and 3.

Because the Court has sustained Camp's first objection, the Court agrees that his total offense level should not be increased by two points for the physical restraint enhancement.  However, because the 2019 PSR already takes into account the three-level reduction for acceptance of responsibility, Camp's total offense level need not be further reduced another three levels as Camp suggests.  Thus, Camp's offense level is 21 instead of 23.  This offense level, combined with Camp's category III criminal history, yields a Guidelines imprisonment range of 46 to 57 months for Counts 1 and 3.

22

Accordingly, Camp's fourth objection is sustained in part and overruled in part as to Counts 1 and 3.

### ii. Count 2

Because this is Camp's second violation of § 924(c), the 25-year mandatory minimum applies to Count 2.  See 18 U.S.C. § 924(c)(1)(C)(i).  Further, Camp's sentence for Count 2 must be run consecutively to his sentence for Counts 1 and 3.  See 18 U.S.C. § 924(c)(1)(A).  Although Camp does not dispute that his sentences must be run consecutively, he raises Dean v. United States, 137 S. Ct. 1170 (2017) in arguing that "a district court may consider the length of statutorily mandated consecutive firearm sentences in determining the sentence for an underlying predicate offense" and, therefore," the Court should "consider the length of [Camp's] statutory mandatory minimum 924(c) sentence and impose minimal concurrent variant sentences on counts 1 and 3 at his resentencing hearing."  Def. 2d Br. at 17.  However, that a court can sentence a defendant leniently does not alter the Guidelines range.

Thus, to the extent that Camp seeks to challenge the applicable Guidelines sentencing range for Count 2, his fourth objection is overruled.

### III.  CONCLUSION

For the foregoing reasons, the Court sustains Camp's first objection, overrules Camp's second and third objections, and sustains in part and overrules in part Camp's fourth objection. Camp's Guidelines imprisonment range is 46 to 57 months for Counts 1 and 3 and 25 years for Count 2.  The sentence for Count 2 shall be run consecutively to the sentence for Counts 1 and 3.

SO ORDERED.

Dated:  October 7, 2021                         s/Mark A. Goldsmith
    Detroit, Michigan                     MARK A. GOLDSMITH
                                        United States District Judge